UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER ZELHOFER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND TECHNICOLOR USA INC.,<br><br>　　　　Defendants. | No. 2:16-cv-00773 TLN AC<br><br><u>ORDER AND FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is proceeding in this action pro se, and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). Defendants' Motion to Dismiss, ECF No. 52, came before the undersigned for hearing on January 25, 2016. Plaintiff appeared at the hearing in pro se, and Defendants were represented by attorney Robert E. Hess. For the reasons set forth below, the court will recommend that Defendants' Motion to Dismiss be granted in part and denied in part. Plaintiff's Motion for Appointment of Counsel, ECF No. 45, is also before the court and will be denied.

I. BACKGROUND

According to the First Amended Complaint ("FAC"), ECF No. 49, Plaintiff became disabled following two consecutive heart procedures on October 1, 2009. As a consequence of his "primary physical disability of heart disease," plaintiff developed the "secondary mental

disorder of severe depression, anxiety and hopelessness with thoughts of suicide." Id. at 32. As an employee of Thompson Inc., predecessor to Technicolor USA, Inc. ("Technicolor"), Plaintiff was a participant in their Long Term Disability Insurance Plan (the "Plan"). The Plan, which is funded through a group insurance policy issued by Metropolitan Life Insurance Company ("Met life"), provides benefits to all eligible employees. Met life is also the claims administrator of Plaintiff's Plan. On March 27, 2010, Plaintiff was approved for long term disability benefits. Plaintiff received benefits for almost two years until they were terminated on March 22, 2012, pursuant to a two-year benefits limitation for mental disorders. On June 6, 2012, Plaintiff appealed Met life's determination for denial of benefits. In a letter dated October 11, 2012, Met life affirmed its decision to deny Plaintiff benefits. Plaintiff was later offered a "courtesy review" which was completed on January 15, 2013.

## II. PROCEDURAL HISTORY

Plaintiff filed this action in state court on March 7, 2016, asserting state law causes of action, and the case was subsequently removed to federal court. ECF No. 1. Plaintiff's motion for remand was denied on grounds that this benefits-related dispute is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., and therefore comes within the exclusive jurisdiction of the federal courts. ECF No. 42. The original complaint was dismissed on statute of limitations grounds, and Plaintiff was granted leave to amend in order to allege facts to support a theory of timeliness. ECF No. 42.

## III.   REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff has requested the appointment of counsel. ECF No. 45. The district court "may request an attorney to represent any person unable to afford counsel," where willing counsel is available. 28 U.S.C. § 1915(e)(1); Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004), cert. denied, 545 U.S. 1128 (2005).

The district court may appoint such counsel where "exceptional circumstances" exist. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009), cert. denied, 559 U.S. 906 (2010) (citing Agyeman, 390 F.3d at 1103). In determining whether or not exceptional circumstances exist, "a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner

1  to articulate his claims pro se in light of the complexity of the legal issues involved.'" Palmer,
2  560 F.3d at 970 (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)). Circumstances
3  common to most pro se litigants, such as lack of formal legal education, do not establish
4  exceptional circumstances that would warrant a request for voluntary assistance of counsel.

5  Having considered the factors under Palmer, the court finds that Plaintiff has failed to
6  meet his burden of demonstrating exceptional circumstances warranting the appointment of
7  counsel at this time. Accordingly, the motion will be denied without prejudice.

8                                      IV.  MOTION TO DISMISS

9  An ERISA action must be dismissed as untimely if (1) it is time barred by the applicable
10 statute of limitations, or (2) it is contractually barred by the limitations provision in the Plan's
11 policy. Withrow v. Bache Halsey Stuart Shield, Inc., 655 F.3d 1032, 1035 (9th Cir. 2011) (citing
12 Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643 (9th Cir.
13 2000) (en banc)). Here defendants contend that the complaint is barred both by the applicable
14 statute of limitations for ERISA claims and by the Plan's contractual limitations provision.

15   A.  Standards Under Rule 12(b)(6)

16 The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
17 Procedure is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n,
18 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal
19 theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v.
20 Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

21 In order to survive dismissal for failure to state a claim, a complaint must contain more
22 than a "formulaic recitation of the elements of a cause of action;" it must contain factual
23 allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v.
24 Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of
25 facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of
26 action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35
27 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to
28 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56), construe those allegations in the light most favorable to the plaintiff, Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (citing Twombly, 550 U.S. 544), cert. denied, 131 S. Ct. 3055 (2011), and resolve all doubts in the plaintiffs' favor. Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010) (citing Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738 (1976)). The court need not accept as true, legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).

The same standards apply where, as here, defendant moves to dismiss based upon the affirmative defense of untimeliness.[1]

> Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint. If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.

ASARCO, LLC v. Union Pacific R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted); see also, Jones v. Bock, 549 U.S. 199, 215 (2007) ("[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the

---

[1] See Fed. R. Civ. P. 8(c)(1) (identifying affirmative defenses, including statute of limitations).

allegations in the complaint suffice to establish that ground"). A complaint may not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995).

  B. Breach of Fiduciary Duty Claim

Both parties proceed on the assumption that plaintiff's "breach of fiduciary duty" claim arises under 29 U.S.C. §§ 1101 e seq., and accordingly is governed by ERISA's internal statute of limitations for such claims, § 1113. Because the motion before the court attacks only the timeliness of the complaint, the undersigned does not address the question whether plaintiff's allegations substantively state a claim under ERISA's fiduciary duty provisions.[2]

Section 1113 provides as follows:

> Limitation of actions
>
> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 USCS §§ 1101 et seq.], or with respect to a violation of this part [29 USCS §§ 1101 et seq.], after the earlier of--
>
>   (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
>   (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

It is undisputed that plaintiff received contemporaneous notification of his benefits termination on March 22, 2012. Because plaintiff was thus on actual notice of the violation he challenges, the three-year limitations period prescribed in § 1113(a)(2) applies. Even applying the accrual principles that govern claims for benefits, see Heimeshoff v. Hartford Life & Accident

---

[2] Plaintiff does not challenge defendant's management of Plan assets or administration of the Plan, but only the individual decision to terminate his disability benefits under the two-year limit for mental disabilities.

5

1   Ins. Co., 134 S. Ct. 604, 610 (2013), plaintiff's filing deadline cannot have been later than three
2   years after his internal appeal of the termination.  Plaintiff's appeal was denied on October 11,
3   2012, and the three-year limitations period accordingly expired on October 11, 2015.[3]  The instant
4   lawsuit was filed on March 7, 2016, and therefore is untimely unless plaintiff's allegations are
5   sufficient to establish fraud or concealment within the meaning of § 1113.

6         For the extended six-year limitations period to apply on grounds of "fraud or
7   concealment," there must be evidence that the Plan and/or Claims Administrator either attempted
8   to defraud the plaintiff or affirmatively concealed its fiduciary breach.  See Barker v. American
9   Mobil Power Corp., 64 F.3d 1397, 1401 (9th Cir. 1995); see also Kurz v. Philadelphia Elec. Co.,
10  96 F.3d 1544, 1552 (3d Cir. 1996) ("The relevant question is . . . not whether the complaint
11  'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative
12  steps to hide its breach of fiduciary duty.").  "Fraud" involves false statements or
13  misrepresentations, made with knowledge of their falsity and with the intent to wrongfully
14  deprive the plaintiff.  See Barker, 64 F.3d at 1401.  "Concealment" requires active steps to
15  prevent plaintiff from discovering the violation.  Id.  Plaintiff has been advised of these standards,
16  and was previously provided an opportunity to amend in order to plead fraud or concealment.
17  ECF No. 42.

18        The allegations of the FAC regarding concealment, ECF No. 49 at 28-31,[4] are somewhat
19  difficult to follow.  Plaintiff first alleges that Plan documents were withheld from him and that the
20  Summary Plan Document (SPD) did not disclose any contractual time limitation.[5]  He then
21  alleges that March 22, 2012 was improperly identified both as his termination date and as his last
22  day of benefits, in order to disqualify him from the Return to Work Program.  This is identified as
23  "Defendant fiduciary's FIRST concealment."  Id. at 29.  The "SECOND concealment" involves a

---

[3] Plaintiff contends that his claim did not accrue until January 15, 2103, when defendant's subsequent "courtesy review" of his case was completed.  This contention is addressed below, in relation to the timeliness of plaintiff's claim for benefits.  To the extent that the three-year limitations period prescribed by § 1113 applies to a putative breach of fiduciary duty claim, the accrual date plaintiff seeks would not lead to a different result.
[4] Citations to court documents refer to the page numbers assigned by the court's electronic docketing system and not those assigned by the parties.
[5] The SPD issue is addressed separately below.

6

contradiction between the medical report and termination letter regarding plaintiff's suitability for the Return to Work Program. Id. at 30. Plaintiff alleges that these two "concealments" induced him to give up investigating his entitlement to the Return to Work Program. Id. Plaintiff also contends that he did not discover the "concealed breach" until the Ohio State Insurance Department concluded its investigation in October 2013. Id. at 31. None of these allegations establish concealment by defendants of facts related to plaintiff's claim for benefits. At most, plaintiff's allegations go to his own understandable confusion about how best to proceed in light of his termination. None of plaintiff's allegations support a fraud theory. The extended six-year limitations period therefore does not apply.

For all these reasons, any claim arising under ERISA's fiduciary duty provisions is time-barred.

C. Claim for Benefits

The gravamen of plaintiff's case is that defendants wrongfully terminated plaintiff's disability benefits. ERISA does not provide a federal statute of limitations applicable to lawsuits seeking benefits, as it does for lawsuits challenging the exercise of fiduciary duties. See Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 646 (9th Cir. 2000) (en banc). Accordingly, this court must determine what statute of limitations applies. As previously noted, an ERISA action for benefits may be time-barred *either* by the applicable statute of limitations *or* by a limitations provision in the Plan's policy. See Withrow, 655 F.3d at 1035.

    1. Statute of Limitations

     a. Accrual Of Plaintiff's Claim

Under federal law, "an ERISA cause of action [for benefits] accrues either at the time benefits were actually denied or when the insured has reason to know that the claim has been denied." Wetzel, 222 F.3d 643. A claimant has reason to know that the claim has been denied where there has been a "clear and continuing repudiation of a claimant's rights under a plan such that the claimant could not have reasonably believed but that his benefits had been finally denied." Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1031 (9th Cir. 2006) (internal quotation

1    marks and citation omitted).  Because ERISA requires an administrative appeals process,

2    exhaustion of which is a prerequisite to suit, a cause of action does not accrue until the Plan issues

3    a final denial of the appeal or the appeal period expires.  Heimeshoff v. Hartford Life & Acc. Ins.

4    Co., 134 S. Ct. 604, 610 (2013); Gordon v. Deloitte & Touch, LLP Group Long Term Disability

5    Plan, 749 F.3d 746, 751 (9th Cir. 2014).

6        Plaintiff's disability benefits were terminated on March 22, 2012.  FAC, Ex. 9 (ECF No.

7    49-1 at 148-150).  He appealed the decision, and was notified on October 11, 2012 that his appeal

8    had been denied.  FAC, Ex. 14 (ECF No. 49-1 at 171-175).  The October 11, 2012 letter

9    concluded as follows: "You have exhausted your administrative remedies under the plan in

10   regards to your conditions of […] disease, and no further appeals will be considered for these."

11   Id.  Accordingly, pursuant to the authorities cited above, plaintiff's claim accrued on October 11,

12   2012.

13       Plaintiff argues that his claim did not accrue until January 15, 2013, when a subsequent

14   "courtesy review" of his appeal was completed.  See FAC, Ex. D (ECF No. 49-1 at 34-35) (letter

15   from Robert Zenner, Appeals Specialist, dated January 15, 2013).  On December 12, 2012,

16   plaintiff had submitted a "courtesy review request" and supporting documentation including

17   letters from two doctors.  See FAC, Ex. C (ECF No. 49-1 at 19-32).  The January 15, 2013 reply

18   demonstrates that Mr. Zenner read and responded to plaintiff's submission, but does not support

19   Plaintiff's theory that his appeal had been effectively re-opened.  The letter states in its opening

20   paragraph, "On October 11, 2012, you were sent a determination on the appeal review, it was

21   indicated in the letter that this was Met Life's final determination on appeal and completed the

22   full and fair review of your disability claim."  ECF No. 49-1 at 34.  The next paragraph reiterates,

23   "Please refer to the letter that was sent to you dated October 11, 2012 for the final determination."

24   Id.  This language cannot reasonably be interpreted as a representation that the appeal had been

25   re-opened.  On the contrary, the January 2013 letter is best understood as an explanation why the

26   appeal was *not* being re-opened or reconsidered.[6]  Accordingly, this correspondence does not

27   ─────────────

28   [6] Moreover, the Plan's provisions for internal appeal do not provide for re-opening a final
     determination via "courtesy review."  See ECF No. 38-3 (Plan) at 56.

support a later accrual date.[7]

### b. Applicable Limitations Period

To identify the statute of limitations that applies to a suit for benefits under an ERISA plan, federal courts must "look to the most analogous state statute" in the state where the claims for benefits arose. Wetzel, 222 F.3d at 646. The Ninth Circuit has squarely held that "California's statute of limitations for suits on written contracts, California Code of Civil Procedure Section 337, provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California." Id. at 648. Accordingly, Plaintiff's claims are subject to a four year statute of limitations. Id.; Cal. Code Civ. Proc. § 337.[8]

Plaintiff's complaint was filed on March 7, 2016, less than four years after the October 11, 2012 accrual of his claim. Accordingly, this lawsuit is not barred by the applicable statute of limitations. The court must therefore turn to the question whether plaintiff is barred by the contractual terms of the Plan. See Wetzel, 222 F.3d at 650 (having found that action is not barred by the statute of limitations, court must consider whether it is contractually barred by the limitations provision in the policy).

### 2. Contractual Limitations Provision

### a. The Heimeshoff Factors

"Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 610 (2013). Such contractual terms in ERISA Plans are judicially enforceable unless the

---

[7] In any event, for the reasons that follow, a later accrual date is not needed to bring plaintiff's claim within the applicable statute of limitations.

[8] The undersigned previously indicated that all of plaintiff's claims are subject to the three-year limitations period established by ERISA for breach of fiduciary duty claims, 29 U.S.C. § 1113(a). See ECF No. 42 at 5. The court erred. The cited statutory provision does not apply to a suit by a Plan participant seeking benefits. Wetzel, which was not brought to the court's attention by the parties, establishes beyond dispute that Cal. Code Civ. Proc. §337 applies and that plaintiff and all other California ERISA plan participants have four years to bring a suit challenging the denial of benefits.

1 court determines "either [1] that the period is unreasonably short, or [2] that a 'controlling statue'

2 prevents the limitations provision from taking effect." Id. at 611.

3 The Plan at issue here provides as follows:

> **Time Limit on Legal Actions.** A legal action on a claim may only be brought against Us during a certain period. This period begins 60 days after the date Proof [of disability] is filed and ends 3 years after the date such Proof is required.

FAC, Ex. A (ECF No. 49-1 at 6).[9]

The court must consider first whether this provision imposes an unreasonably short limitations period. A three-year limitations provision, triggered by the deadline for proof of loss rather than by accrual of the legal claim, is common in ERISA plans and the Supreme Court has held that such a provision is not unreasonably short. See Heimeshoff, 134 S. Ct. at 612-13. Plaintiff's argument to the contrary is therefore unavailing.

As to the second Heimeshoff factor, the court is unaware of any "controlling statute" that prevents the Plan provision from taking effect. ERISA itself is not such a statute. Id. at 613, 616 (rejecting argument that Plan provision for three-year limitation period, commencing before accrual of claim, is contrary to ERISA itself). Nor is California Code of Civil Procedure Section 337, which merely provides the default statute of limitations. See id. at 611 (distinguishing default statutes). Neither § 337, nor any other statute of which the court is aware, bars California parties generally or ERISA plans and participants in particular from choosing by contract a limitations period shorter than the default statutory period. Cf. Louisiana & Western R. Co. v. Gardiner, 273 U.S. 280, 284 (1927) (contractual provision requiring suit against common carrier within two years and one day after delivery was invalid under a federal statute "declar[ing] unlawful any limitation shorter than two years from the time notice is given of the disallowance of the claim").

The instant lawsuit was not filed within the time provided by the contractual provision. Plaintiff alleges that he became disabled no later than October 1, 2009. FAC, ECF No. 49 at 31.

---

[9] Plaintiff provides excerpts of the Plan document. Defendants have submitted the complete Plan document, ECF No. 38-3 at 2-58.

Under the terms of the Plan, he then had 90 days to submit proof of disability. FAC, Ex. A (ECF No. 49-1) at 5. Plaintiff's time to file proof therefore extended to December 30, 2009. The three year contractual limitations period ran from this date, and expired on December 30, 2012. The initial complaint was filed on March 7, 2016, over three years too late. Accordingly, plaintiff's claim for benefits is time-barred unless the contract provision is unenforceable for a reason other than the Heimeshoff factors.

    b. Other Asserted Bars to Enforceability of the Contractual Limitations Provision

Plaintiff contends that the limitations provision may not be enforced against him because it is ambiguous; because it is not contained in the Summary Plan Document ("SPD"); and because plaintiff was not specifically informed of the limitations provision when his benefits were terminated or during the course of his appeal and other communications with defendants about their decision. Plaintiff further contends that defendants should be estopped from relying on the contractual provision, and that the limitations period should be equitably tolled.[10] Because the absence of the provision from the SPD is dispositive under controlling Ninth Circuit authority, the other issues need not be discussed at length. The court nonetheless makes the following findings:

First, even if ambiguity could defeat application of a contractual limitations provision, the term in the Plan at issue here is not ambiguous. The provision, quoted above, clearly states that a participant must (1) wait 60 days after filing proof of disability before suing, and (2) file suit no later than three years after the proof deadline. FAC, Ex. A (ECF No. 49-1 at 6). The Plan is equally clear that the proof deadline is 90 days following onset of disability. Id. at 5. Plaintiff's misunderstanding of the Plan's terms does not make its language ambiguous.

Second, defendants' failure to affirmatively advise plaintiff of the applicable limitations provision does not defeat enforceability, because defendants had no duty under ERISA to provide such notice. See Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899, 907-908 (9th Cir. 2009).

---

[10] Plaintiff has been provided an opportunity to amend his complaint in order to clarify and further support his allegations that defendants are estopped from asserting a time bar and that he is entitled to equitable tolling. See ECF No. 42.

Regarding the asserted equitable exceptions, plaintiff's estoppel showing fails to establish that he was lulled by defendants' conduct into reasonably believing that defendants did not intend to rely on the contractual limitations period, or that the limitations period subsequently expired due to plaintiff's reliance on defendants' representations. See Lamantia v. Voluntary Plan Administrators, 401 F.3d 1114, 1120-21 (9th Cir. 2005) (affirming application of estoppel). Plaintiff has presented detailed allegations, well supported by documentary evidence, that he was in communication with Met Life about his claim from the time he first sought benefits through the middle of 2014. See FAC, ECF No. 49 at 42; ECF No. 39-1. In none of the referenced correspondence, however, did any Met Life representative indicate that defendants would not be relying on the limitations provision or that plaintiff's time to file a lawsuit would be extended. Without such representations, there can be no estoppel.[11]

Finally, plaintiff is not entitled to equitable tolling because (1) he did not diligently pursue both internal review and judicial review, and (2) was not prevented from filing suit within the presumptive limitations period by extraordinary circumstances. See Heimeshoff, 134 S. Ct. at 615.[12] The pendency of plaintiff's complaint to the Ohio Department of Insurance cannot support tolling because no external circumstance prohibited plaintiff from seeking judicial review at the same time. Defendants' alleged failure to promptly provide requested information does not

---

[11] Plaintiff may have believed, in good faith although in error, that he should not or could not file a lawsuit until he had tried every other way of restoring his benefits. However, estoppel applies only where the defendants' conduct caused the participant to miss his filing deadline. Heimeshoff, 134 S. Ct. at 615. The record here demonstrates no more than Met Life's continued responses to plaintiff's complaints and inquiries. Even crediting Plaintiff's allegation that the Appeals Specialist told him orally that the "courtesy review" was pending, plaintiff could not reasonably have believed that defendants were waiving the limitations provision or that he was prevented from filing suit in the meantime.

[12] Equitable tolling is different from equitable estoppel in that it need not turn on conduct of the defendant(s). Tolling does, however, require both (1) "extraordinary circumstances" which prevented timely filing, and (2) diligence on plaintiff's part. Id. The equitable tolling inquiry focuses on whether plaintiff's delay in filing is excusable. Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002). "'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period [due to extraordinary circumstances], then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" Id. (quoting Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000)).

12

support tolling because plaintiff was already on notice of the facts giving rise to his claim, and the requested information was not necessary in order to file suit within the limitations period. See Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002).

      c.  Absence of Limitations Provision from Summary Plan Document

Although the Plan itself contains an unambiguous and substantively reasonable limitations provision, that provision is not included or referenced in the Summary Plan Document (SPD). See FAC, Ex. 1 (SPD) (ECF No. 39-1 at 107-123). Defendants contend that the absence of the provision from the SPD does not affect the validity of the provision, because the SPD is not the Plan and does not establish the Plan's terms. For the latter proposition, defendants cite CIGNA Corp. v. Amara, 563 U.S. 421, 438 (2011). ECF No. 52-1 at 13. As the court now explains, defendants' reliance on CIGNA is misplaced. Moreover, and more seriously, the defense argument is directly contrary to controlling Circuit authority that counsel has improperly failed to bring to the court's attention.

Defendants accurately recite the Supreme Court's conclusion in CIGNA that ERISA-required summary documents do not themselves constitute the terms of a benefits plan, but merely provide information about the plan. However, the Supreme Court in CIGNA was considering neither a limitations issue nor a question about the absence of an essential provision from an SPD. The case involved a pension plan's allegedly deficient notice to its participants about substantial changes to the structure and calculation of benefits, and the district court's remedy of equitable reformation of the Plan. In the course of considering the district court's remedial authority, the Court rejected an argument that the district court had properly construed the Plan in accordance with the recitation of its terms in the SPD. CIGNA, 563 U.S. at 436-38. The rejection of that theory, and the Court's distinction between the terms of the Plan itself and the simplified communication of those provisions in a summary document, establishes that language in an SPD cannot trump language in a Plan. Id. at 437-38. But that principle has no direct bearing on the question whether there is any legal significance to an SPD's complete failure to mention the existence of a limitations period for bringing suit.

The Ninth Circuit has expressly held that failure to properly disclose a limitations provision in an SPD, as required by 29 U.S.C. § 1022(b), renders the provision unenforceable. Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, 770 F.3d 1282, 1294 (9th Cir. 2014), cert. denied, 136 S. Ct. 317 (2015) (". . . we hold that because the limitations periods were not properly disclosed in the SPDs, these provisions are unenforceable."). As the Court of Appeals explained:

> Because SPDs serve as "the employee's primary source of information regarding employment benefits," *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1143 (9th Cir. 2002)*, they are subject to a number of statutory and regulatory requirements. In particular, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" must be clearly disclosed in the SPD. *Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899, 904 (9th Cir. 2009)* (internal quotation marks omitted) (quoting *29 U.S.C. § 1022(b)*). A limitation of the time for bringing suit qualifies as a circumstance "which may result in disqualification, ineligibility, or denial or loss of benefits." *Id. at 906* (internal quotation marks omitted) (quoting *29 U.S.C. § 1022(b)*).

Id. at 1294-95. The SPDs at issue in Spinedex *did* disclose the existence of the contractual limitations provisions, but failed to do so in compliance with applicable regulations. Because the limitations provisions were not placed in "close conjunction" to benefits provisions, the court found that a reasonable plan participant would not find them. For that reason, the limitations provisions could not bar the plaintiffs' untimely lawsuit. Id. at 1295-96.

Spinedex compels the conclusion that the absence of a limitations provision in an SPD – an even more egregious violation of § 1022(b) than its placement in the wrong section of the document – defeats its enforceability. Defendants do not dispute that the SPD at issue here omits reference to the limitations period. The limitations provision contained in the Plan therefore cannot be enforced against plaintiff on his claim(s) for benefits.

The undersigned is disturbed by defense counsel's failure to inform the court of the holding of Spinedex. Counsel has an ethical obligation to acknowledge controlling adverse authority.[13] That obligation is particularly important where the opposing party is proceeding in

---

[13] See, e.g., Cal. Rules Prof. Conduct, Rule 5-200(B) (counsel shall not mislead the court regarding the facts or law); ABA Model Code Prof. Responsibility, DR 7-106(B)(1) (lawyer shall

1  pro se. The omission cannot have been attributable to ignorance. Even if counsel for the
2  defendant insurer had somehow been unaware of the case – which is hard to believe – he was
3  aware of Scharff v. Raytheon, supra, which is cited by the Spinedex court in the quoted passage
4  above. Defendants relied on Scharff for its holding that a Plan has no duty to separately notify a
5  participant whose benefits are being terminated of the deadline for suit. Yet defendants ignored
6  the other primary section of the Scharff opinion, which turns on the principle that that
7  enforceability of a contractual limitations provision depends on its proper disclosure in an SPD.
8  Scharff, 581 F.3d at 906-907.[14] Counsel here is strongly cautioned that any future failure to
9  identify contrary authority may be grounds for sanctions. See United States v. Stringfellow, 911
10  F.2d 225, 226 (9th Cir.1990) (where counsel fails to cite controlling case law that renders its
11  position frivolous, he or she "should not be able to proceed with impunity in real or feigned
12  ignorance of them, and sanctions should be upheld.")

## V. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiff's Motion for Appointment of Counsel, ECF No. 45, is DENIED.

Further, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss, ECF No. 52, be GRANTED as to petitioner's breach of fiduciary duty claim only, and otherwise DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written

---

disclose to the court legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client and which is not disclosed by opposing counsel); ABA Model Rules Prof. Conduct, Rule 3.3 (lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel). The Ninth Circuit has observed that this rule "is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not the victims of lawyers hiding the legal ball." Transamerica Leasing, Inc v. Compania Anonima Venezolana de Navegacion, 93 F.3d 675, 675-76 (9th Cir.1996).

[14] In Scharff, the court found the particular disclosure to be adequate, and therefore enforced the limitations provision. Id. The Spinedex court distinguished Scharff on its facts. 770 F.3d at 1295-96.

objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 28, 2017

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE